UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHELLE MARIA GOULART,

    Plaintiff,

        v.                                    No. 3:15-cv-1573(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

**RULING ON PENDING MOTIONS**

Plaintiff Michelle Maria Goulart has filed this appeal of the adverse decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 22]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 23]. The undersigned heard oral argument on January 13, 2017. For the reasons that follow, the Commissioner's decision is affirmed.

**Legal Standard**

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

**Background**

Plaintiff filed her DIB and SSI applications on October 12, 2011, alleging a disability onset date of September 14, 2011.  Her claims were denied at both the initial and reconsideration levels.  On September 12, 2013, Plaintiff, who was represented by counsel, appeared and testified at a hearing before administrative law judge Deirdre R. Horton (the "ALJ").  On March 28, 2014, the ALJ issued a decision denying Plaintiff's claims.  The Appeals Counsel denied review of the ALJ's decision, making it the final decision of the Commissioner.[1]  This action followed.

Plaintiff's DIB and SSI applications allege disability based on both physical and mental impairments; the arguments presented on appeal before this Court, however, pertain only to the ALJ's evaluation of the mental impairments.  Plaintiff has a high school education.  (R. 47).  At the time of the hearing, she was working part time on a per diem basis.  (*Id.*).  Plaintiff last worked full time in 2008.  (R. 64).

At oral argument the parties stipulated to Plaintiff's medical background as presented in the briefs accompanying both parties' motions.  The Court adopts these facts and incorporates them by reference herein.

**The ALJ's Decision**

The ALJ followed the sequential evaluation process for assessing disability claims.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 23).  She determined that any work Plaintiff performed since the alleged

---

[1] In her request for Appeals Council review, Plaintiff submitted additional medical records, including lengthy mental health treatment notes from 2007-2012.  (R. 2).  The Appeals Council determined that the additional evidence did not provide a basis for changing the ALJ's decision.  (*Id.*).

2

onset date did not rise to the level of substantial gainful activity. (*Id.*). At Step Two, the ALJ found the following severe impairments: bipolar disorder; degenerative disc disease of the cervical spine; and degenerative disc disease of the lumbar spine. (*Id.*). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 24-26). Next, the ALJ determined Plaintiff retained the following residual functional capacity[2]:

> Plaintiff can perform light work except she can understand, remember, and carry out simple routine tasks; can occasionally interact with the general public; and can occasionally interact directly with supervisors and co-workers.

(R. 26-33). At Step Four, the ALJ found Plaintiff had no past relevant work. (R. 33). Finally, at Step Five, the ALJ used the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (hereinafter the "Grids") as a framework to find that there are other jobs in the national economy Plaintiff can perform. (*Id.*). In making the Step Five finding, the ALJ determined that the RFC's nonexertional limitations have little or no effect on the occupational base of unskilled work. (*Id.*). Accordingly, the ALJ found Plaintiff not to be disabled.

## Discussion

Plaintiff raises several issues on appeal, which the Court will discuss in turn.

1. **Evaluation of Plaintiff's impairments**

First, Plaintiff argues that the ALJ failed to evaluate all of her mental impairments and erred in only finding Plaintiff's bipolar disorder as severe at Step Two. Plaintiff maintains that the evidence shows she has attention deficit hyperactivity disorder, anxiety, depression, memory problems, posttraumatic stress disorder, and cognitive deficits following chemotherapy. Plaintiff

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

further argues that the ALJ erred by failing to assess the functional limitations of all of these mental impairments.

The Court finds that substantial evidence supports the ALJ's Step Two analysis. While the record does show that Plaintiff has been diagnosed with mental impairments in addition to bipolar disorder, a mere diagnosis does not compel a finding that an impairment is severe. Case law instructs that a diagnosis alone does not equate to a finding of severity. *See Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (explaining that a "mere diagnosis … without a finding as to the severity of symptoms and limitations does not mandate a finding of disability.").

Plaintiff's brief and points at oral argument focus on the position that the ALJ did not properly evaluate Plaintiff's memory problems and her limitations in interacting with others. The ALJ explicitly considered these limitations, however, when reviewing the "paragraph B" criteria of Listings 12.04 (depressive, bipolar, and related disorders) and 12.09 (reserved). The ALJ found Plaintiff has moderate difficulties in concentration, persistence, or pace. (R. 25). Specifically, the ALJ considered Plaintiff's memory deficits, and concluded that they resulted in no more than moderate limitations based on notes from treatment providers finding intact memory and fair attention span. (R. 26). The ALJ also found moderate difficulties in social interaction. (R. 25). She supported this conclusion with specific reference to treatment notes reflecting lack of more severe deficits and by noting Plaintiff was capable of performing part-time work requiring social interaction. (*Id.*). A careful review of the record indicates the ALJ's analysis in this area is supported by substantial evidence.

Plaintiff relies on *Burgin v. Astrue*, 348 F. App'x 646 (2d Cir. 2009) in support of her argument that the ALJ erred at the second step in the sequential evaluation process. This reliance in misplaced. In *Burgin*, the court found that the ALJ erred in failing to meaningfully

4

consider how the claimant's combination of mental impairments impacted her ability to work; this was error because the ALJ had determined that the claimant had as severe impairments bipolar disorder *and* major depression, but only accounted for the bipolar disorder when determining the RFC.  *Id.* at 648.  Here, there is not evidence sufficient to find that Plaintiff had a severe mental impairment other than bipolar disorder; as such, *Burgin* is inapposite.

Finally, "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).  An AJL's finding that an impairment is not severe at Step Two is harmless error when, as here, the ALJ finds other severe impairments and continues with the sequential evaluation.  *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013).  In such a circumstance, "because the ALJ did find several severe impairments and proceeded in the sequential process, all impairments, whether severe or not, were considered as part of the remaining steps."  *Id.*  Therefore, even if the ALJ had erred at Step Two, that error is harmless in this case.

At oral argument, Plaintiff's counsel adeptly argued for a finding of error at Step Two.  Despite counsel's skillful advocacy, however, the standard of review for this Court is one of substantial evidence.  With this standard in mind, it cannot be said that the ALJ's evaluation of Plaintiff's mental impairments is not supported by substantial evidence.  *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*") (emphasis in original) (internal quotation marks omitted).

2. **Development of the record**

Plaintiff next argues that the ALJ erred in not fully developing the record because the ALJ relied on lack of record evidence to discount the opinions of one of Plaintiff's treatment providers without taking adequate steps to develop the record further.

Plaintiff's argument must be rejected for three reasons. First, the ALJ's weighing of the opinion evidence is supported by substantial evidence. Plaintiff maintains that the ALJ erred in giving the opinions of Nurse Wratchford little weight. Nurse Wratchford submitted several medical source statements, to which the ALJ gave "less weight" because the limitations they described were "far more severe than those described by Dr. Selden, who is an examining expert," and because the limitations described were "not consistent with her treatment notes or with clinical observations recorded by the claimant's other treating and examining sources." (R. 31).

As an advanced practice registered nurse ("APRN"), Nurse Wratchford is not considered an "acceptable medical source" under the regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Rather, she is an "other source" whose opinion can be evaluated "to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Id.* There are several factors ALJs should consider in weighing the opinions of "other sources." *See Titles II & Xvi:II & Xvi: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims*, SSR 06-03P (S.S.A. Aug. 9, 2006). These factors include the following:

> (1) How long the source has known and how frequently the source has seen the individual;
> (2) How consistent the opinion is with other evidence;
> (3) The degree to which the source presents relevant evidence to support an opinion;
> (4) How well the source explains the opinion;

>  (5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
>  (6) Any other factors that tend to support or refute the opinion.

*Id.* at *4-5.

Here, the ALJ appropriately considered Nurse Wratchford's opinions, and adequately explained the weight he gave them. This is sufficient. *See Quiles v. Colvin*, No. 3:13-CV-1905 (SRU), 2016 WL 543102, at *3 (D. Conn. Feb. 10, 2016). Further, it is within the ALJ's discretion to determine what weight to give an "other source's" opinion. *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995). In all, the ALJ's evaluation of Nurse Wratchford's opinions is supported by substantial evidence.

The Court notes that one of Nurse Wratchford's opinions was co-signed by psychiatrist. To the extent Plaintiff may argue that this co-signature converts Nurse Wratchford's "other source" opinion into one from an "acceptable medical source" entitled to controlling weight, this argument must fail. When an APRN's opinion is cosigned by a psychiatrist, "but there are no records or other evidence to show that the psychiatrist treated [the claimant], the APRN's opinion does not constitute the opinion of the physician." *Perez v. Colvin*, No. 3:13-CV-868 HBF, 2014 WL 4852836, at *26 (D. Conn. Apr. 17, 2014), *report and recommendation adopted,* No. 3:13-CV-868 JCH, 2014 WL 4852848 (D. Conn. Sept. 29, 2014). Here, there is no indication the psychiatrist treated, or even examined, Plaintiff. (R. 31). As such, the ALJ was not required to treat the opinion as one from an "acceptable medical source."

Second, the ALJ fulfilled her duty to assist in developing the record. While the ALJ does indeed have a duty to develop the record, this duty is not limitless. "[T]he ALJ is not required to obtain every conceivable piece of information; the Commissioner's conclusion will be sustained if the record contains sufficient evidence to sustain that conclusion under the applicable

7

standard." *Knight v. Astrue*, 32 F. Supp. 3d 210, 222 (N.D.N.Y. 2012) (citing *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir.1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citations omitted)).

Here, the ALJ more than satisfied her duty to develop the record. Plaintiff tried many times to obtain outstanding treatment notes from her counselor, Abigail Fulton. (R. 43-45). At the hearing, Plaintiff's counsel explained the difficulty in obtaining these records, and the ALJ stated she would subpoena them. (R. 45). The ALJ subsequently issued two subpoenas, dated September 17, 2013 and October 11, 2013. (R. 205, 208). The ALJ also telephonically followed up on the subpoena on one occasion and had a hearing office employee follow up on another. (R. 316, 323). Ms. Fulton was aware that the ALJ was requesting the records; she said Plaintiff's file was very large and that her office was "working on getting [it] printed." (R. 323). The ALJ closed the record on February 28, 2014, without obtaining Ms. Fulton's outstanding notes. (*Id.*). The records were eventually obtained and were submitted to the Appeals Council along with Plaintiff's request for review of the ALJ's decision. (R. 1-4, 867-1380).

The ALJ's actions do not amount to a dereliction of her duty to develop the record. An ALJ is required to make "every reasonable effort to help [a claimant] get medical reports." 20 C.F.R. §§ 404.1512(d), 416.912(d). The ALJ did that here: she twice subpoenaed the records and followed up on both subpoenas. There was nothing else she needed to do. *See Thomas v. Barnhart*, No. 01 CIV. 518 (GEL), 2002 WL 31433606, at *5 (S.D.N.Y. Oct. 30, 2002) (finding the duty satisfied when the ALJ issued subpoenas for records, even though the subpoenas were

not responded to, when the record as a whole "contained extensive information on [a claimant's] medical conditions covering the full period in dispute.").

Third, the records were submitted to the Appeals Council, which determined they would not change the outcome of the ALJ's decision. The Appeals Council did have the records before it, and, upon review of them, concluded that they did not provide a basis for changing the ALJ's decision under 20 C.F.R. 405.401(c). [3] The Court's review of the additional evidence compels agreement with the Appeals Council. The records reveal mostly normal mental status examinations, (R. 895-944, 956-77, 983, 992-1095, 1107-1117, 1121-45, 1149-1273, 1282-1380), and support the assessed RFC.

Finally, Plaintiff also argues that the ALJ was required to order a second consultative exam. The ALJ had before her a consultative exam from Dr. Selden from January 12, 2012, along with a fully developed medical record. There was no need for a second consultative exam in this case. An ALJ "is to order a consultative exam only when [the existing] information is not 'sufficient' to make a decision." *Firpo v. Chater*, 100 F.3d 943 (2d Cir. 1996). Here, the ALJ had sufficient evidence before her, including one consultative exam from January 2012, to make

---

[3] 20 C.F.R. § 405.401(c) provides as follows:
    (c) If you submit additional evidence, the Appeals Council will consider the additional evidence only where it relates to the period on or before the date of the hearing decision, and only if you show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision, and
    (1) Our action misled you;
    (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
    (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.
20 C.F.R. § 405.401. Since the Court agrees with the Appeals Council that the additional evidence does not "show that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision," it need not address the other requirements of the regulation.

a decision without ordering a second consultative exam. *See id.* ("Since the consultative exam contemplated by the regulations had already been conducted earlier in the process, ordering another exam would have been duplicative.").

3. **The RFC**

Finally, Plaintiff argues that her well-documented memory and concentration problems are not properly addressed by the RFC's limitation to simple, routine tasks; she contends that these nonexertional impairments should have been considered severe and incorporated into the RFC. She further avers that, if these limitations were properly incorporated in the RFC, vocational expert ("VE") testimony would be required at Step Five.

The analysis here is twofold. The first issue is whether the RFC is supported by substantial evidence. The ALJ gave great weight to the opinion of Dr. Selden, who concluded as follows: "Ms. Goulart presents with anxious mood and appears jittery. She was otherwise interpersonally appropriate… Ms. Goulart has reduced concentration, reasonable short-term memory, and mild reduction in planning and organization and language skills. (R. 395). While Dr. Selden noted Plaintiff "lacks adequate coping skills and is easily flummoxed," she also assessed a GAF score of 58 (indicating moderate symptoms) and found Plaintiff to be "largely independent in her [activities of daily living]." (*Id.*). These findings support the RFC, and support that a limitation to simple, routine tasks accounts for all of Plaintiff's nonexertional limitations.

The second issue is whether VE testimony was required, assuming the RFC was sufficient. VE testimony was not required given the assessed RFC. When a claimant's nonexertional limitations "significantly limit the range of work permitted by [her] exertional limitations," an ALJ must not rely solely on the Grids at Step Five and must consult a VE. *Bapp*

*v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).  A nonexertional impairment "significantly limits" a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity.'"  *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) (citing *Bapp* at 605-06).  The Second Circuit has held that when an ALJ finds a claimant's mental condition did not limit the ability to perform unskilled work, including carrying out simple instructions, that claimant's "nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Medical-Vocational Guidelines was permissible."  *See id.  See also Lewis v. Astrue*, No. 3:11-CV-1163 GTS, 2012 WL 6097303, at *7 (N.D.N.Y. Dec. 7, 2012) *aff'd sub nom. Lewis v. Colvin*, 548 F. App'x 675 (2d Cir. 2013) (finding that a limitation to simple instructions, "which does not significantly limit [claimant's] capacity to perform light work," warranted reliance on the Grids at Step Five.).  In addition, a limitation to occasional interaction does not significantly limit the range of unskilled work, and reliance on the Grids in such an instance is appropriate.  *See Verret v. Colvin*, No. 3:14-CV-234 (SRU), 2016 WL 1182980, at *2 (D. Conn. Mar. 28, 2016) (an RFC requiring "only occasional interaction with others is in accord with the description of unskilled work that requires following simple instructions – especially in light of the fact that such jobs ordinarily involve dealing primarily with objects, rather than with data or people.") (internal quotation marks omitted).

     Here, a limitation to simple tasks and occasional interaction with others does not significantly limit the range of unskilled work.  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  *Titles II & Xvi: Capability*

11

*to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985).  Accordingly, the ALJ was not required to call a VE in this case.

## **Conclusion**

After a thorough review of the administrative record and consideration of the arguments raised by Plaintiff, Plaintiff's motion to reverse [Doc. # 22] is DENIED and the Commissioner's motion to affirm [Doc. # 23] is GRANTED.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  20th  day of January, 2017, at Bridgeport, Connecticut.

       */s/ William I. Garfinkel*
       WILLIAM I. GARFINKEL
       United States Magistrate Judge